**UNITED STATES of America**

v.

**CERTIFIED ENVIRONMENTAL SERVICES, INC.; Nicole Copeland; Elisa Dunn; Sandy Allen; and Frank Onoff; Defendants.**

No. 5:09–CR–319.

United States District Court, N.D. New York.

Aug. 1, 2011.

French–Alcott, PLLC, Daniel J. French, Esq., of counsel, Syracuse, NY, for Defendant CES, Inc.

Hiscock & Barclay, LLP, Gabriel M. Nugent, Esq., of counsel, Syracuse, NY, for Defendant CES, Inc.

Donald T. Kinsella, Esq., Albany, NY, for Defendant Copeland.

Dennis B. Schlenker, Esq., Albany, NY, for Defendant Dunn.

James R. McGraw, Esq., Syracuse, NY, for Defendant Allen.

Stuart J. LaRose, Esq., Syracuse, NY, for Defendant Onoff.

Richard S. Hartunian, United States Attorney, of counsel, Craig A. Benedict, Esq., Assistant United States Attorney, Jessica M. Alloway, Esq., Todd W. Gleason, Esq., United States Department of Justice, Syracuse, NY.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. *INTRODUCTION*

Following a nine-day trial, the jury found defendants Certified Environmental Services, Inc. ("CES"), Nicole Copeland ("Copeland"), Sandy Allen ("Allen"), and Elisa Dunn ("Dunn") (collectively "CES defendants") guilty of all of the charges

against each of them.[1] More specifically, the jury convicted defendants of the following:

### CES:

Count 1 Conspiracy to defraud the United States and to violate the Clean Air Act and the Toxic Substances Control Act and to commit mail fraud related to fifty-eight overt acts from 1999 through 2007 at locations in and around Syracuse, New York

Count 2 Aiding and abetting violations of the Clean Air Act pertaining to WSTM Channel 3 TV, 1030 James Street, Syracuse, New York ("WSTM") from August 9, 2004, to February 10, 2005

Count 3 Aiding and abetting violations of the Clean Air Act pertaining to 403–405 Tulip Street, Liverpool, New York ("Tulip Street") from August 16 to 18, 2004

Count 4 Aiding and abetting violations of the Clean Air Act pertaining to Rothchild Development, 705 Genesee St., Syracuse, New York ("Rothchild") from July 14 to 27, 2005

Count 5 Aiding and abetting violations of the Clean Air Act pertaining to Raymour & Flanagan Warehouse, 7248 Morgan Rd., Liverpool, New York ("Raymour & Flanagan") from July 19 to August 4, 2006

Count 6 Aiding and abetting violations of the Clean Air Act pertaining to Kellogg Free Library, Route 26, Cincinnatus, New York ("Kellogg Library") from June 15 to 29, 2006

Count 7 Aiding and abetting violations of the Clean Air Act pertaining to Alpha Chi Omega (a Syracuse University Sorority House), 705 Walnut Street, Syracuse, New York ("Alpha Chi") from August 17 to 23, 2007

Count 8 Mail fraud regarding 155 Kappesser Street, Syracuse, New York ("Kappesser Street") from October to December 2004

Count 9 Mail fraud regarding 104 Court Street, Wampsville, New York ("Court Street") from December 28, 2005

Count 10 Mail fraud regarding WSTM from August 2, 2004 to February 20, 2005

Count 11 Mail fraud regarding Raymour & Flanagan from June 27 to August 31, 2006

Count 12 Mail fraud regarding Alpha Chi from August 1 to September 26, 2007

Count 13 Mail fraud regarding Kellogg Library from April 24 to July 19, 2006

Count 14 False statements regarding aggressive air monitoring at Alpha Chi (August 22, 2007)

Count 15 False Statements regarding aggressive air monitoring at Alpha Chi (August 23, 2007)

### Copeland:

Count 1 Conspiracy to defraud the United States and to violate the Clean Air Act and the Toxic Substances Control Act and to commit mail fraud related to fifty-eight overt acts from 1999 through 2007 at locations in and around Syracuse, New York

Count 2 Aiding and abetting violations of the Clean Air Act pertaining to WSTM from August 9, 2004, to February 10, 2005

Count 3 Aiding and abetting violations of the Clean Air Act pertaining to Tulip Street from August 16 to 18, 2004

---

1. The jury found co-defendant Thomas Juliano not guilty of the three charges against him. Ct. Ex. 13, Juliano Verdict Form, Dkt. No. 179.

Count 4 Aiding and abetting violations of the Clean Air Act pertaining to Rothchild from July 14 to 27, 2005

Count 5 Aiding and abetting violations of the Clean Air Act pertaining to Raymour & Flanagan from July 19 to August 4, 2006

Count 6 Aiding and abetting violations of the Clean Air Act pertaining to Kellogg Library from June 15 to 29, 2006

Count 7 Aiding and abetting violations of the Clean Air Act pertaining to Alpha Chi from August 17 to 23, 2007

Count 8 Mail fraud regarding Kappesser Street from October to December 2004

Count 10 Mail fraud regarding WSTM from August 2, 2004, to February 20, 2005

Count 11 Mail fraud regarding Raymour & Flanagan from June 27 to August 31, 2006

Count 12 Mail fraud regarding Alpha Chi from August 1 to September 26, 2007

Count 13 Mail fraud regarding Kellogg Library from April 24 to July 19, 2006

*Allen:*

Count 1 Conspiracy to defraud the United States and to violate the Clean Air Act and the Toxic Substances Control Act and to commit mail fraud related to fifty-eight overt acts from 1999 through 2007 at locations in and around Syracuse, New York

Count 2 Aiding and abetting violations of the Clean Air Act pertaining to WSTM from August 9, 2004, to February 10, 2005

Count 10 Mail fraud regarding WSTM from August 2, 2004 to February 20, 2005

*Dunn:*

Count 1 Conspiracy to defraud the United States and to violate the Clean Air Act and the Toxic Substances Control Act and to commit mail fraud related to fifty-eight overt acts from 1999 through 2007 at locations in and around Syracuse, New York

Count 7 Aiding and abetting violations of the Clean Air Act pertaining to Alpha Chi from August 17 to 23, 2007

Count 12 Mail fraud regarding Alpha Chi from August 1 to September 26, 2007

Count 14 False statements related to aggressive air monitoring at Alpha Chi on August 22, 2007

Count 15 False statements related to aggressive air monitoring at Alpha Chi on August 23, 2007

First Superseding Indictment at 8–42, Dkt. No. 80 (hereinafter "Indictment"); Court Exs. 8–12, Verdict Forms, Dkt. Nos. 174–178.

Defendant Frank Onoff ("Onoff") entered into a plea and cooperation agreement with the United States ("the government") on October 8, 2009. Dkt. No. 34. Onoff pled guilty to Count 1 of the Indictment, conspiracy to defraud the United States, to violate the Clean Air Act, to violate the Toxic Substances Control Act, and to commit mail fraud, related to fifty-eight overt acts from 1999 through 2007 at locations in and around Syracuse, New York.

In addition to the locations charged in the individual counts set forth above, Oneonta Job Corps, 21 Homer Folks Avenue, Oneonta, New York ("Oneonta Job Corps"); U.S. Salt, Salt Point Road, Watkins Glen, New York ("U.S. Salt"); Seneca Federal Savings Bank, 35 Oswego Street, Baldwinsville, New York ("Seneca Bank"); and Cazenovia Flower Shop, Cazenovia, New York ("Flower Shop"); among oth-

ers, were among the overt acts charged in Count 1. Indictment at 14–28.

The government seeks the following three categories of restitution from defendants: (1) remediation costs; (2) air monitoring costs paid by victims to CES; and (3) asbestos abatement costs. According to the government, remediation costs amounted to $449,407.76; air monitoring costs paid to CES were $164,198.66; and asbestos abatement costs were $197,516.91. Thus, the total restitution sought by the government is $811,123.33. Defendants objected to the government's restitution figures.

Consequently, a hearing was held on April 26, 2011, on the issue of restitution. Decision was reserved. As directed, the parties filed proposed findings of fact and conclusions of law. In addition to the evidence presented at the hearing and the parties' proposed findings of fact and conclusions of law, the parties' sentencing memoranda were considered in making the following findings of fact and conclusions of law.

## II. FACTS

Aapex Environmental Services, Inc. ("Aapex") and Paragon Environmental Construction, Inc., ("Paragon") were asbestos abatement contractors that sometimes contracted with CES to perform air monitoring at its asbestos abatement projects.

Aapex and Paragon failed to comply with federal and state laws regulating asbestos removal. In other words, they removed asbestos without complying with statutory and regulatory requirements for doing so safely (such as properly stripping, removing, bagging, containing, transporting, and disposing of asbestos), commonly referred to as "rip-and-run."

Aapex pled guilty to an information charging two counts: conspiracy to violate the Clean Air Act and Clean Water Act related to asbestos rip-and-run activities from 1996 through the date of the plea agreement (June 2008) and mail fraud related to providing false information in order to fraudulently obtain low interest rates. *See* N.D.N.Y. Case No. 5:08–CR–171, Dkt. No. 3. The government and Aapex agreed to a restitution amount of $75,000.00. *Id.*

Paragon pled guilty to a single-count information charging conspiracy to violate the Clean Air Act related to asbestos rip-and-run activities from 1999 through the present (November 2008). *See* N.D.N.Y. Case No. 5:08–CR–624, Dkt. No. 3. The government and Paragon agreed to a restitution amount of $12,345.00. *Id.*

Proper air sampling techniques and laboratory analysis, in accordance with federal and state laws, are designed to detect the presence of asbestos fibers at the completion of an asbestos removal project, to assure that asbestos has been completely removed and the area is safe. However, improper sampling techniques and laboratory analysis as were performed by CES permitted illegal rip-and-run offenses such as those committed by Aapex and Paragon to remain undetected (at least for a time).

CES, in addition to other laboratory services, conducted air sampling and performed laboratory analysis related to asbestos abatement projects. Co-defendant Barbara Duchene ("Duchene") was a part owner of CES, its Vice President of Laboratory Operations, and its Laboratory Manager. The government dismissed the Indictment as against Duchene when she pled guilty to a state misdemeanor charge.

Copeland was employed by CES beginning in 1998 and throughout the relevant time period except for six months in 1999–2000 when she worked for another compa-

ny. She became a supervisor for CES in 2000. Her responsibilities included oversight of air monitoring conducted for asbestos abatement projects. She directed other CES employees, including Dunn and Allen, to conduct certain air monitoring functions and was responsible for the use of required techniques for sample-taking and documentation in order to assure that the monitoring results were accurate. However, with regard to the offenses at issue here, Copeland directed CES employees to conduct air monitoring without following the requirements for doing so safely, enabling such air monitoring to be done much more rapidly and in such a manner as to provide results that did not reveal the rip-and-run asbestos removal done by the abatement contractors Aapex and Paragon. With regard to the sites for which restitution is sought, Copeland was involved with WSTM, Tulip Street, Rothchild, Raymour & Flanagan, Kellogg Library, Alpha Chi, Kappesser Street, and Oneonta Job Corps.

Dunn was hired by CES in April 2006. She was a supervisor of air monitoring for CES and also performed air monitor sampling. She reported to Copeland and others. With regard to the offenses at issue here, Dunn performed the duties of an air monitoring technician. Dunn performed air monitoring and documentation at Alpha Chi and the Flower Shop.

Allen was an air technician for CES. He has been employed by CES since 1992. He performed air monitoring and documentation at WSTM, Court Street, and Seneca Bank.

Onoff was a supervisor on asbestos abatement projects for Paragon, although sometimes he did the work of a laborer. He has been employed by Paragon since 1999. He was a supervisor on the Raymour & Flanagan, Kellogg Library, and Kappesser Street projects.

The first category of restitution sought, remediation costs, includes projected or actual costs of remediation and air monitoring, as well as un-reimbursed losses, pertaining to Oneonta Job Corps; Tulip Street; Raymour & Flanagan; Court Street; WSTM; Kappesser Street; and Alpha Chi. Of these first-category locations, only Alpha Chi had an abatement contractor other than Aapex or Paragon. Aapex handled Oneonta Job Corps, Tulip Street, and WSTM. Paragon handled Raymour & Flanagan, Court Street, and Kappesser Street.

Of the $449,407.76 the government seeks as restitution for category one, $447,122.20 related to Aapex and Paragon projects, whereas $2,285.56 related to Alpha Chi. The amount sought for Aapex projects is $297,372.20; the amount sought for Paragon projects is $149,750.00.

The second category of restitution sought is comprised of air monitoring costs paid to CES involving Syracuse University and Environmental Protection Services, Inc. (collectively "SU/EPS") (that is, Alpha Chi and various buildings at Syracuse University and LeMoyne College).[2] The total of $164,198.66 sought by the government as second-category restitution includes *all* amounts paid to CES, including payment for non-air sampling services, background air sampling, pre-abatement air sampling, and environmental air sampling.

The third category of restitution the government seeks is asbestos abatement costs; that is, the amount paid by victims to Aapex and Paragon. Included in the third category of restitution sought are

**2.** Although the sampling and laboratory analysis done by CES were not done properly, the actual asbestos abatement was done properly. Therefore, no restitution for remediation costs (category one) and the cost of the abatements (category three) is sought.

amounts pertaining to Oneonta Job Corps; Tulip Street; Raymour & Flanagan; Court Street; WSTM; and Kappesser Street, for which category one restitution is also sought. Additionally, restitution is sought for asbestos abatement costs pertaining to U.S. Salt and Seneca Federal Savings. Of the $197,516.91 sought for third-category restitution, $107,771.07 relates to Aapex projects and $89,745.84 relates to Paragon projects. Of the $197,516.91 paid by victims to Aapex and Paragon for asbestos abatement, CES was paid only $6,686.95.

The sum of first- and third-category restitution sought related to Aapex projects is $405,143.27. The $75,000.00 agreed-to restitution from Aapex is just under twenty percent (20%) of this sum.

The sum of first- and third-category restitution sought related to Paragon projects is $239,495.84. The $12,345.00 agreed-to restitution from Paragon is approximately five percent (5%) of this sum. The $87,345.00 sum of restitution from Aapex and Paragon pursuant to their plea agreements is just under fourteen percent (14%) of the restitution sought from the CES defendants related to Aapex and Paragon projects.

### III. *RESTITUTION STANDARD*

Restitution "to the victim of the offense" must be ordered where the conviction is, inter alia, "an offense against property" under Title 18. 18 U.S.C.A. § 3663A(a)(1), (c)(1) (2000). A victim is defined as "a person directly and proximately harmed as a result of the commission of [the] offense." *Id.* § 3663A(a)(2).

The restitution order is governed by § 3664. *Id.* § 3663A(d). Pursuant to § 3664, the government bears the burden of establishing "the amount of the loss sustained by a victim as a result of the offense." *Id.* § 3664(e). A defendant has

the burden of establishing his or her financial resources and the financial needs of any dependents. *Id.* "[T]he court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). The economic circumstances of the defendant are considered in determining "the manner in which, and the schedule according to which, the restitution is to be paid." *Id.* § 3664(f)(2). Any insurance or other payment to compensate the victim cannot be considered when determining the amount of restitution. *Id.* § 3664(f)(1)(B).

If multiple defendants contributed to the victim's loss, each defendant may be made liable for the entire restitution amount or a proportionate share. *Id.* § 3664(h). When liability is apportioned among defendants, "the level of contribution to the victim's loss and economic circumstances of each defendant" should be considered in order to determine each defendant's proportionate share. *Id.*

### IV. *CONCLUSIONS OF LAW*

The government accepted $87,345.00 as the amount of loss suffered by victims whose losses were caused by the rip-and-run asbestos abatements performed by Aapex and Paragon. These victims are Oneonta Job Corps, Tulip Street, Raymour & Flanagan, Court Street, WSTM, Kappesser Street, Rothschild, the Flower Shop, U.S. Salt, Seneca Bank, and the Kellogg Library. Because the government accepted $87,345.00 as being the amount of loss these victims suffered, its current attempt to establish that they suffered a loss of $641,639.11 must fail. The full amount of the loss of victims Oneonta Job Corps, Tulip Street, Raymour & Flanagan, Court Street, WSTM, Kappesser Street, Rothschild, the Flower Shop, U.S.

Salt, Seneca Bank, and the Kellogg Library is $87,345.00.

The government established that Alpha Chi suffered a loss of $4,919.56 as a result of the offense conduct.

■ The government asserts that SU/EPS suffered a total loss amount of $161,564.66, consisting of payments made to CES. However, this amount includes payments made to CES for services not related to the offense conduct. Restitution for amounts paid for non-air sampling services such as bulk asbestos sampling and analysis would not be proper as they did not pertain to the crimes charged. Additionally, as background air sampling, pre-abatement air sampling, and environmental air sampling are required prior to any asbestos abatement work, it is not proper to include payments for these services in a calculation of the victim's total loss amount. This type of sampling is generally done without entering the contained abatement work area, and therefore would not be affected by improper asbestos abatement. Moreover, the government failed to establish any wrongdoing pertaining to the sampling and analysis of background air sampling, pre-abatement air sampling, and environmental air sampling. A loss suffered by making payment for this type of sampling cannot be said to be direct and proximate harm resulting from the offense. Thus, the amounts paid to CES for these services are not properly the subject of a restitution order. SU/EPS sustained a loss of $24,837.40 ($20,-186.88 to Syracuse University and $4,650.52 to EPS) due to the offenses of which defendants were convicted.

Based upon the foregoing, the total amount of losses suffered by the victims for which restitution by these defendants must be ordered is $117,101.96.[3]

Of the losses sustained by the victims, the great majority occurred as a result of the rip-and-run asbestos removal done by Aapex and Paragon. Of the total sustained loss put forth by the government of $641,639.11, the sum of $447,122.20 represented actual or estimated cost of cleaning up asbestos left behind by Aapex and Paragon after their rip-and-runs. The remaining $197,516.91 represented payments to Aapex and Paragon by the victims for the abatement work. Only a small portion (approximately 10.5%) of this was paid to CES. Additionally, only about $6,687 was paid to CES for clearance air sampling. Moreover, none of the SU/EPS locations involved rip-and-runs or other improper asbestos removal—the only loss sustained pertaining to these locations were the payments made to CES.

■ Thus, this is an appropriate case to apportion restitution. Therefore, "the level of contribution to the victim's loss and economic circumstances of each defendant" must be considered. See 18 U.S.C.A. §§ 3664(h). Consideration of each defendant's contribution to the victims' losses and the economic circumstances of each of them, lead to the following conclusions.

■ The role CES played in causing losses resulting from improper asbestos removal was relatively small compared with the rip-and-run activities of Aapex and Paragon, although it was involved with all of the seventeen locations set forth in the indictment as to all fifteen counts of conviction. CES will be ordered to pay restitution of the total amount of $117,101.96.

3.
This total was calculated as

| | | |
|---|---|---|
| $ 75,000.00 | (Aapex projects) |
| 12,345.00 | (Paragon projects) |

follows:

| | |
|---|---|
| 4,919.56 | (Alpha Chi) |
| + 24,837.40 | (SU/EPS) |
| $117,101.96 | |

Copeland was convicted of Counts 1 through 8, and Counts 10 through 13. However, the only locations with which she was involved were WSTM, Tulip Street, Rothchild, Raymour & Flanagan, Kellogg Library, Alpha Chi, Kappesser Street, and Oneonta Job Corps. She was merely a supervisor of air monitoring, not a laboratory manager or shareholder as was Duchene. Given Copeland's contribution to the losses and her economic circumstances, she will be ordered to pay restitution of twenty percent (20%) of the total losses, or $23,420.00.

Allen began employment with CES in 1991. He had involvement in the WSTM, Court Street, and Seneca Bank projects. The amount sought by the government for losses sustained related to WSTM, Court Street, and Seneca Bank constitutes about ten percent (10%) of the total amount it sought. Allen performed air sampling—he had no supervisory role. He also played no role in laboratory analysis of the samples or the false reports of such testing. Allen is currently employed, earning $12.25 per hour. He lives with his mother and other family members. Although he has a positive cash flow of $75.00 per month, if he were paying rent it would be negative by several hundred dollars (i.e. by the amount of his rent payment). Based upon his relatively minimal role in the entire conspiracy and his economic situation, Allen's proportionate share of the total restitution amount is five percent (5%), or $5,855.00.

Dunn was involved with air monitoring for Alpha Chi and the Flower Shop. She was a supervisor for CES. However, she reported to Copeland and others. Further, she was acting as a technician with regard to Alpha Chi and the Flower Shop. Like Allen, she played no role in laboratory analysis of the samples or the false reports of such testing. The government

sought $4,919.56 in restitution as to Alpha Chi and $6,475,68 as to the Flower Shop. Of the $6,475.68 sought pertaining to the Flower Shop which the victim paid to Aapex, only $816.50 was paid to CES. Additionally, Dunn was not hired by CES until April 2006, toward the end of the conspiracy (which occurred from 1999 through 2007). She is currently unemployed, and her household has a negative cash flow. Given Dunn's minor role and her economic circumstances, she will be ordered to pay restitution of five percent (5%), or $5,855.00.

■ Onoff was employed by Paragon as an asbestos abatement supervisor and worker from 1998 through 2008, and had been employed in the asbestos abatement field since 1989. As noted above, he was convicted upon his guilty plea to the conspiracy count of the indictment (Count 1). As part of his plea agreement, he consented to entry of an order of restitution. He was a supervisor for Paragon during asbestos abatement projects at Raymour & Flanagan, Kappesser Street, and the Kellogg Library. The amounts sought by the government for these locations is about ninety-four percent (94%) of the total amount sought for Paragon projects. There was no evidence that Onoff had involvement in Court Street, the only other Paragon project. However, the amount sought for Paragon projects is only about thirty percent (30%) of the total restitution the government seeks. While Onoff is responsible for all the losses attributed to the conspiracy of which he was convicted, his relative role in the entire conspiracy is reflected by the percentage of projects in which his employer was involved in comparison to the totality of the projects. Moreover, the government has agreed that Paragon, Onoff's employer, is responsible for $12,345. Onoff remains employed by Paragon, but as a laborer rather than a

supervisor. This demotion resulted in loss of health insurance benefits, vacation benefits, and use of a company vehicle. His wife is currently unemployed. They rent, not own, their home. Their household has a negative cash flow. Further, Onoff and his wife have two minor children remaining at home. Upon consideration of Onoff's role in the offense, his financial situation, and his need to support his dependents, he will be ordered to pay restitution of thirty percent (30%) of the loss attributable to Paragon, or $3,703.50.

### V. *CONCLUSION*

As the government accepted $87,345.00 as the total amount of loss sustained by the victims of the offense convictions of Aapex and Paragon, it is precluded from now claiming that the loss sustained was $644,639.11. The total loss sustained by Alpha Chi was $4,919.56. The total amount of loss sustained by SU/EPS as a result of the offenses of conviction was $24,837.40.

Multiple defendants contributed to the losses sustained by the victims. This is an appropriate case for apportionment of liability as to each defendant pursuant to 18 U.S.C. § 3664(h).

Accordingly, it is

ORDERED that restitution will be ordered as follows:

1. Certified Environmental Services, Inc.: $117,101.96;

2. Nicole Copeland: $23,420.00;

3. Sandy Allen: $5,855.00;

4. Elisa Dunn: $5,855.00;

5. Frank Onoff: $3,703.50; and

6. Each of the above-listed defendants will be jointly and severally liable to the extent of the restitution order as against that individual.[4]

IT IS SO ORDERED.

---

4. For example, Nicole Copeland is jointly and severally liable for $23,420.00.